IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANGELA L. I.,[1]

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil No. 18-cv-1816-DGW[2]

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in October 2015, alleging a disability onset date of September 1, 2008. (In her brief, plaintiff admits that she cannot show disability before May 8, 2014. See, Doc. 20, p. 3.) After holding an evidentiary hearing, an ALJ denied the application on October 26, 2017. (Tr. 15-26). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1). Plaintiff exhausted her administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10, 23.

## Issue Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to consider whether her lichen sclerosus met or equaled the relevant Listing.

2. The ALJ erred in accepting the state agency reviewers' opinions because they did not consider her diagnosis of lichen sclerosus of the genitalia.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 2019 WL 1428885, at *3 (S. Ct. Apr. 1, 2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a

3

rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked since the alleged onset date. She was insured for DIB through June 30, 2016. The ALJ found that plaintiff had severe impairments of diabetes, obesity, hypertension, hyperlipidemia, chronic lumbar pain syndrome, depression, and lichen sclerosus of the genitalia.[4] The ALJ concluded that these impairments did not meet or equal a listed impairment without specifying whether he considered a specific Listing regarding lichen sclerosus.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the medium exertional level, including occasionally lifting up to fifty pounds, frequently lifting up to twenty-five pounds, standing and/or walking up to six hours, and sitting up to six hours, with the following limitations:

> she can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl but she cannot climb ladders, ropes, or scaffolds. She can occasionally work at unprotected heights, in extreme cold, and around moving mechanical parts but she is limited to the performance of simple, routine tasks, making simple work-related decisions.

The ALJ found that plaintiff could not do her past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the

---

[4] Vulvar lichen sclerosus (VLS) is a chronic inflammatory dermatosis characterized by ivory-white plaques or patches with glistening surface commonly affecting the vulva and anus. Common symptoms are irritation, soreness, dyspareunia, dysuria, and urinary or fecal incontinence. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5496281/, visited on May 10, 2019.

national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. As plaintiff's points relate only to her lichen sclerosus, the Court will focus on that evidence.

1. **Agency Forms**

Plaintiff was born in 1963 and was almost 54 years old on the date of the ALJ's decision. (Tr. 194). She said she was disabled because of high blood pressure, enlarged heart, high cholesterol, lichen sclerosus, diabetes, and back problems. She had a ninth-grade education and had worked as a self-employed nanny. She did housekeeping and child care duties in that role. (Tr. 199-200, 222-223).

2. **Evidentiary Hearings**

Plaintiff was represented by an attorney at the hearing in January 2017. (Tr. 33).

Plaintiff testified that she had lichen sclerosus in her genital area. The disease "takes off all [her] skin." She had cracking of the skin. It caused burning and pain. Sitting caused her pain, so she had to lay down a lot of the time. It itched at night and sometimes during the day. She took pain pills. She had been to several doctors, but they could not get it under control. (Tr. 38). When she sweats, sweat causes burning in her open wounds. She carried a towel with her when she left the house and would have to go into the bathroom and wipe down her

genital area. (Tr. 44). She estimated that, when her lichen sclerosus was really bad, she would have to lay down for most of the day "a little bit over half of the month." Urination caused burning. She had to wipe herself down with a wet towel after urinating. She sometimes sat in a tub of cool water to relieve her symptoms. (Tr. 46-48).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could not do plaintiff's past work, but she could do other medium exertional level jobs that exist in the national economy. If she were to be off task more than 10% of the day in addition to regular breaks or absent from work more than one day a month, she would be unemployable. (Tr. 51-56).

### 3. Relevant Medical Records

In May 2014, plaintiff saw Dr. Darrell Ballinger for a second opinion. She had been diagnosed with lichen sclerosus of the vulva, and the current treatment was not effective. She complained of vulvar itching. He noted that a biopsy in 2012 suggested lichen sclerosus. He prescribed Elocon and Aldara creams. (Tr. 752-753). In July, she reported some relief but had recurrent vaginal itch. (Tr. 750).

Plaintiff went to the emergency room in August 2014, complaining of intermittent vaginal pain and irritation for the past year. She had a history of frequent yeast infections and was a type II diabetic whose blood sugar was not well-controlled. On pelvic exam, she had significant inflammation of the vaginal area with white discharge. Urine analysis showed a urinary tract infection. She

was discharged on antibiotics and was educated about keeping her blood sugar down to help with chronic yeast infections and vaginal irritation. (Tr. 431-434).

Plaintiff saw Dr. Musick, a dermatologist, in November 2014. She complained of itching in her vaginal area, and intermittent burning and irritation. On exam, she had symmetrical hypopigmented scaly plaques on the labia. Her symptoms were consistent with lichen sclerosus. He prescribed Clobetasol cream.[5] In December 2014, she reported that the cream helped, but she was still a little itchy at times. On exam, the scaling was much improved, but hypopigmentation was present. He prescribed Protopic, but her insurance would not pay for it. Plaintiff agreed to pay $75.00 for a substitute, Elidel cream.[6] In April 2015, she presented with continued irritation and itching. Dr. Musick noted white scaling on the labia and significant hypopigmentation. Elidel was not working. She had a possible yeast infection. He instructed her to stop using the topical steroids "for now" and prescribed a 7-day course of Diflucan.[7] In May 2015, the doctor noted she had a history of chronic dermatitis of the right vulva for which she was using Clobetasol cream. (Tr. 541-547).

In November 2015, plaintiff's primary care physician, Dr. John Magner, noted that she had a three-year history of lichen sclerosus. She had tried "multiple creams" without relief. She said she was in constant pain and took pain medication daily. She said that the affected skin "breaks and bleeds" and it was

---

[5] Clobetasol cream contains a synthetic corticosteroid. https://www.drugs.com/pro/clobetasol-cream.html, visited on May 13, 2019.
[6] Elidel is an immunosuppressant. https://www.drugs.com/elidel.html, visited on May 13, 2019.
[7] Diflucan is an antifungal medication. https://www.drugs.com/diflucan.html, visited on May 13, 2019.

painful to urinate. On exam, she was tender to palpation of the vulvar region. There were white plaques and erythema in the vulvar region and vaginal opening and hypopigmentation of the vulvar region and perineum. He prescribed an antihistamine for itching and a Medrol dose pack. Because she was "refractory to treatment," he planned to refer her to another dermatologist and to a gynecologist. In December 2015, he prescribed an estrogen cream. (Tr. 630-637).

Plaintiff went to the emergency for increased vaginal pain in February 2016. (Tr. 584).

In February 2016, plaintiff was seen by a nurse at Southern Illinois Healthcare for vaginal itch and discharge. On exam, there were no lesions on the vulva, but there was a lichens lesion on the cervix. The nurse prescribed Lidocaine jelly. She also had a yeast infection. (Tr. 743-745).

Plaintiff saw Dr. Magner in April 2016. She was complaining of "severe pain from lichen sclerosis [sic] which does not seem to properly align with her disease state." He increased the dosage of Hydroxyzine, an antihistamine, and refilled Tramadol. He suggested a referral to pain management. The exam notes do not indicate that the doctor performed a vaginal exam. (Tr. 625-628). He referred her to a dermatologist in August for lichen sclerosus. (Tr. 619).

In July 2016, Dr. Ballinger, a gynecologist at Southern Illinois Healthcare, noted that a routine gynecological exam was normal. There were no lesions of the vulva and no tenderness of the vagina or cervix. (Tr. 739-742). In March 2017, Dr. Ballinger diagnosed postmenopausal atrophic vaginitis.[8] (Tr. 735-738).

---

[8] "Postmenopausal atrophic vaginitis, or vaginal atrophy, is the thinning of the walls of the vagina

Dr. Magner prescribed a Medrol dose pack and ibuprofen 800 mg for lichen sclerosus in January 2017. (Tr. 608-609). In April 2017, a nurse at Southern Illinois Healthcare prescribed Tramadol for lichen sclerosus. (Tr. 598-599).

Plaintiff saw another gynecologist, Dr. Pericles Xynos, in May 2017. She said that her symptoms of itching and pain had worsened. She had used Clobetasol and estrogen creams in the past but was not currently using anything. On exam, Dr. Xynos noted complete loss of normal architecture and hair of the external genitalia, white plaques where clitoris was and extending to the vaginal opening, encompassing both sides to labia majora. He diagnosed lichen sclerosus and prescribed a twelve-week course of Clobetasol ointment. He referred her to the vulvar clinic. She was to return to hm in six months if she had not been seen in the vulvar clinic by then. (Tr. 765-767).

Plaintiff was seen in the vulvar clinic by Dr. Mitul Shah in June 2017. Dr. Shah wrote that plaintiff told her that she had lichen sclerosus for four years and had been biopsied twice. She had stopped using Clobetasol cream because it burned. She was "not currently on any treatment for the last six months." She took Tramadol only once per month. She complained of vulvar burning and itching. On exam, there was a thick white patch and areas of splitting. Dr. Shah stated that her lichen sclerosus was uncontrolled and a biopsy would be needed if the white patches persisted. She prescribed Triamcinolone ointment for lichen sclerosus.[9] She also diagnosed vulvitis and recommended that plaintiff use a

---

caused by decreased estrogen levels." https://www.healthline.com/health/atrophic-vaginitis, visited on May 13, 2019.
[9] Triamcinolone is a corticosteroid. https://www.drugs.com/triamcinolone.html, visited on May 14,

vegetable-based moisturizer multiple times per day. She was to return in eight weeks. (Tr. 771-786).

## Analysis

Plaintiff first argues that the ALJ failed to consider whether her lichen sclerosus met or equaled Listing 8.05, Dermatitis. Defendant does not dispute her assertion that Listing 8.05 is the relevant Listing.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. In order to be found presumptively disabled, the claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that she meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

The requirements of Listing 8.05 are "Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Extensive skin lesions are defined in the introductory paragraph to the 8.00 series as follows:

> Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

2019.

b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. § Pt. 404, Subpt. P, App. 1., Paragraph 8.00.C.1.

The ALJ's discussion of the Listings is at Tr. 18. He discussed whether plaintiff's back condition met Listing 1.04, whether her hypertension met any of the Listings in the 4.00 series, and whether her mental impairments met Listing 12.04. He also discussed whether her diabetes met a Listing in another body system as set forth in Listing 9.0. Conspicuously missing from the discussion is any analysis of whether lichen sclerosus met a Listing.

Defendant argues that the failure to discuss Listing 8.05 is harmless error because the evidence establishes that plaintiff's condition did not meet or equal that Listing.

The Commissioner's position must be rejected because the ALJ failed to discuss medical evidence favorable to plaintiff's claim that she met or equaled Listing 8.05. For example, he failed to note that Dr. Magner called her condition "refractory to treatment." He pointed out that Dr. Xynos said plaintiff need not return for six months, ignoring the fact that Dr. Xynos expected her to be seen in the vulvar clinic before then. And, while he noted that plaintiff saw Dr. Shah at the vulvar clinic in June 2017, he did not acknowledge that Dr. Shah described plaintiff's lichen sclerosus as "uncontrolled" and described a thick white patch and areas of splitting. The Commissioner's discussion of this visit in her brief is also lacking. She suggests that the areas of splitting were attributable to a yeast

infection, and that Dr. Shah told plaintiff she need not return for eight years. See, Doc. 25, pp. 6, 10. Neither of those statements are supported by the record. While Dr. Shah did diagnose a yeast infection along with lichen sclerosus, she in no way suggested that the yeast infection caused the splitting. And, the Commissioner ignores the fact that Dr. Shah's note first says that plaintiff was to return in eight *weeks*. It is true that, later in the notes, there is a statement that plaintiff should return in "about 8 years." (Tr. 782). However, Dr. Shah's comment about the need for a biopsy if the white patches persist suggests that she intended to monitor plaintiff's condition. It is far more likely that the doctor intended to see her back in eight weeks rather than eight years.

*Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015) is instructive here. In that case, the ALJ's "analysis" consisted only of the statement that "The evidence does not establish the presence" of the Listing's requirements. The Seventh Circuit called this "the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-936. The ALJ in *Minnick* also failed to discuss relevant medical evidence. "We cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, this pertinent evidence. If the ALJ did consider and dismiss some or all of this evidence, she never so stated." The Seventh Circuit held that the ALJ failed to build the required "logical bridge" from the evidence to her conclusion. *Minnick*, 775 F.3d at 936. The same is true here.

The Commissioner's brief argues that plaintiff's lesions are not "extensive

skin lesions" because they do not limit her ability to ambulate, as required by Paragraph 8.00C.1.C. Doc. 25, p. 9. The argument fails for several reasons. First, ability to ambulate is not a litmus test. Paragraph 8.00C.1 does not purport to be a definitive and exhaustive list of "extensive skin lesions." Rather, it presents examples for illustrative purposes: "Examples of extensive skin lesions that result in a very serious limitation include but are not limited to . . . ." The argument ignores plaintiff's point, which is that she cannot regularly sit for up to six hours as specified in the RFC assessment because of burning, itching, and pain in her genital area. There is no logical reason why lesions that prevent walking would qualify as extensive, but lesions that prevent sitting would not. Lastly, the ALJ obviously did not rely on that rationale for deciding that plaintiff did not meet or equal Listing 8.05 since he did not discuss that Listing at all. The ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. *Hughes v. Astrue*, 705 F.3d 276, 279(7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision....").

The Court notes the two district court cases cited by defendant at Doc. 25, p. 9. District court decisions are not authoritative precedents. *Van Straaten v. Shell Oil*, 678 F.3d 486, 490 (7th Cir. 2012). And, the cited cases are inapposite. In the first case, the plaintiff did not even identify psoriasis as a condition contributing to her disability at the hearing. *Thornton v. Colvin*, 2014 WL 2515226, at *3 (S.D. Ind. 2014). In the second case, the ALJ explicitly considered

13

whether the plaintiff's skin condition met a series 8.00 Listing. *Moyer v. Astrue*, 2008 WL 313243, at *5 (S.D. Ind. 2008).

This is not to say that the ALJ was required on this record to find that plaintiff meets the requirements of Listing 8.05. However, there is relevant evidence that was not discussed by the ALJ in this context. While the Court acknowledges that the ALJ's decision must be read as a whole, the failure to explain why this relevant evidence did not establish that plaintiff met the Listing leaves the Court unable to review the ALJ's decision in this regard. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012), citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). See also, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[A] a denial of benefits cannot be sustained where an ALJ failed to articulate the bases of his assessment of a claimant's impairment.")

The Court also agrees with plaintiff's second point, which is that the state agency reviewers' opinions do not provide substantial support for the ALJ's decision because they did not consider the effect of her lichen sclerosus.

Both state agency reviewers stated that plaintiff "alleges disability due to high blood pressure, enlarged heart, back problems, [and] diabetes." Both reports omitted lichen sclerosus from the list of her medically determinable impairments, and both omitted a Listing relevant to lichen sclerosus from the statement of Listings considered. (Tr. 61-65, 85-89). In view of these omissions, the Court cannot accept the Commissioner's argument that the state agency reviewers must

have considered lichen sclerosus because dermatology records and Dr. Chapa's consultative exam report were included in the records given to them. See, Doc. 25, p. 16. In another case, it might be appropriate to presume that the state agency reviewers considered all relevant Listings. It is not appropriate where, as here, the reviewers omitted any mention of the impairment and omitted the relevant Listing from the statement of Listings considered.

Because of the ALJ's errors, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** May 15, 2019.

*Donald Wilkerson*

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**